

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed September 30, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 13** |
| | § | |
| **Kennedy Lynn Poole and** | § | **Case No. 21-32224** |
| **Eureka Valentin Alexander-Poole** | § | |
| | § | |
| **Debtors.** | § | |
| | § | |

---

## MEMORANDUM OPINION AND ORDER REGARDING HOW TO DETERMINE DEBTORS' HOUSEHOLD SIZE FOR THE PURPOSES OF CALCULATING THE APPLICABLE COMMITMENT PERIOD UNDER 11 U.S.C. § 1325(b)(4)

Before the Court is the *Trustee's Amended Objection to Confirmation* (the "**Objection**")[1]

filed on May 26, 2022, by the Chapter 13 Trustee, Thomas D. Powers (the "**Trustee**"), by which

the Trustee objected to confirmation of the *Amended Chapter 13 Plan* (the "**Plan**"),[2] filed by

Kennedy and Eureka Poole (the "**Debtors**") on March 16, 2022. By the Objection, the Trustee

_____
[1] Dkt. No. 60.
[2] Dkt. No. 50.

asserted that the Debtors had overcounted their household size. On June 23, 2022, the Debtors filed their *Memorandum of Points and Authorities*,[3] which opposed the Objection and requested that the Court adopt the "Heads on Beds" Approach to measuring household size. In response, on June 23, 2022, the Trustee filed his *Memorandum Regarding How to Determine Debtors' Household Size for the Purposes of Calculating the Applicable Commitment Period Under 11 U.S.C. § 1325(b)(4)*,[4] which requested the Court adopt the Economic Unit Approach to measuring household size.

On June 27, 2022, the Court held a hearing on the Objection. The Trustee, the Debtors, and the Debtors' counsel appeared. The Court took testimony from Mrs. Eureka Alexander-Poole. At the parties' request and because the issue presented appears to be a matter of first impression within the Northern District of Texas, the Court took the matter under advisement to issue a published opinion to give the parties further guidance. At the hearing, the parties requested the Court only issue a ruling as to which approach applies and asserted that they would then confer regarding calculation of the Debtors' applicable "household" number. Therefore, this ruling narrowly determines only which approach applies for purposes of the calculation of household size pursuant to 11 U.S.C. § 1325(b)(4).

## I.      Jurisdiction and Venue.

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). The bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33. Venue in the Northern District of Texas is proper under 28 U.S.C. § 1409. The following shall constitute this Court's findings of fact and conclusions of law.

---

[3] Dkt. No. 63.
[4] Dkt. No. 64.

## II.    **Background**.

The Debtors' financial and living situation is unique, to say the least. At the time of the hearing on the Trustee's Objection, there were seven (7) individuals living in the Debtors' home—the Debtors, Mrs. Poole's mother (70), Mrs. Poole's sister, a nephew (12), a niece (21), and the Debtors' adult son, who was recovering from a recent ocular surgery and could not work.[5]

While there are multiple individuals living within the home, they are not all solely dependent on the Debtors. For example, the Debtors' niece, a college student, lives with the Debtors while going to school and working approximately thirty (30) hours per week. Ms. Poole's mother, who is retired, receives nearly $700.00 per month in Social Security benefits and is not wholly dependent on the Debtors. Mrs. Poole's sister, who had lost her job during the COVID-19 pandemic, has recently found new employment, which allows her to contribute to household expenses. She likewise pays the majority of the expenses related to her son, the Debtors' nephew. Though these individuals clearly contribute to the home, they likewise levy additional expenses on the Debtors' household. For example, the Debtors pay for the niece's insurance, some of the nephew's clothing, and Ms. Poole's mother's diabetes test strips and eye drops.

It is without question that the Debtors are generous and compassionate when it comes to supporting their family. However, what is at issue, particularly due to these unique facts, is how to properly measure the Debtors' household size. At the hearing on the Objection, the Trustee asserted that the Court should adopt the Economic Unit Approach to measuring the household size. By doing so, the Trustee claimed there were only six (6) members of the household, a measure that left out the niece. The Debtors, however, contended that the Court should adopt the "Heads

---

[5] An eighth individual, a grandchild, had been living with the Debtors at the time of filing the Chapter 13 Petition but was no longer living at the home and was not counted for purposes of the proposed Plan. The Debtors expressed that there was no current intention for their grandchild to move back into the home.

on Beds" Approach, a measure which would include the niece, leaving a household size of seven

(7). Further, the Debtors contended that the proper approach should consider only the expenses of

those other members in the household, but not their income.[6]

### III.    Statutory Framework and Applicable Law.

The number of individuals in a debtor's household is a vital component of the "means test"

under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"). A

Chapter 13 plan must commit all "disposable income" to unsecured creditors.[7] "Disposable

income" is defined by the Bankruptcy Code as "current monthly income received by the debtor"

less the "amounts reasonably necessary to be expended for the maintenance or support of the

debtor or a dependent of the debtor[.]"[8] The calculation of "amounts reasonably necessary to be

expended" is based, in part, on the size of a debtor's "household."[9] A court must compare the

debtor's income to the "highest median family income of the applicable State" for the household

size.[10] If the debtor's income is higher than that number, then § 707 (b)(2)(A)-(B) provides which

expenses are allowed. If the debtor's income is lower than that number, the debtor's actual

expenses are used.

Additionally, in a chapter 13 case, the "means test" ultimately determines, among other

things, the debtor's "applicable commitment period," meaning how long the debtor will be

obligated to make payments under a plan, typically thirty-six (36) or sixty (60) months.[11] If a

debtor's annualized current monthly income ("**CMI**") is *above* the median income for a household

of the same size within a state, the debtor must make plan payments for sixty (60) months, unless

---

[6] For example, the Debtors asserted that the niece's income should not be counted for the household, while her expenses, which were considerable, should be counted.
[7] 11 U.S.C. § 1325(b)(1)(B).
[8] *Id.* § 1325(b)(2)(A)(i).
[9] *See id.* § 1325(b)(3).
[10] *See id.*
[11] *Id.* § 1325(b)(4).

the creditors are paid in full at an earlier date. Therefore, before a court can compare a debtor's CMI to the applicable median income level, the debtor's "household" must be calculated.[12] Thus, the determination of how many members make up a debtor's "household" is ultimately of *great* importance in determining the amount of income a debtor has available to fund plan payments.[13] Despite the unquestionable importance of this measure, the Bankruptcy Code does not define "household."

Courts have adopted three approaches to resolving the size of a debtor's household: (1) the "Heads on Beds" Approach; (2) the Income Tax Dependent Approach; and (3) the Economic Unit Approach.[14] The "Heads on Beds" Approach follows the Census Bureau's broad definition of a household as "all the people who occupy a housing unit." This approach does not consider the contributions of the members or their relationships to one another. The Income Tax Dependent Approach follows the Internal Revenue Service's (the "**IRS**") definition from the Internal Revenue Code that merely looks to determine who was or could be included on the debtor's tax returns as a dependent. Finally, the Economic Unit Approach requires the court to assess the exact number of the members of a household that work as a single economic unit by determining who are financially dependent on the debtor and who financially support the debtor, as well as how the income and expenses of the unit are intermingled.

## IV.   <u>Analysis</u>.

The Court finds itself in a similar situation to Goldilocks and the three bears' porridge. One choice is too hot, the "Heads on Beds" Approach overcounts household size. One choice is too cold, the Income Tax Dependent Approach undercounts household size. But one choice is just

---

[12] *See In re Skiles*, 504 B.R. 871, 875 (Bankr. N.D. Ohio 2014).
[13] *See In re Ford*, 509 B.R. 695, 697–98 (Bankr. D. Idaho 2014).
[14] *Johnson v. Zimmer*, 686 F.3d 224, 226–27 (4th Cir. 2012).

right, the Economic Unit Approach. For the following reasons, the Court finds the Economic Unit

Approach proper and consistent with the purpose of the Bankruptcy Code.

The starting point for any question of statutory interpretation is the language of the statute

itself.[15] However, as already noted, the word "household" is not defined in the Bankruptcy Code,

despite its regular use. When a word is not defined by the statute, a court should apply its ordinary

meaning.[16] Further, when interpreting a word's plain meaning, a court should not consider that

word in a vacuum; rather, the word should be understood in context with those words and phrases

surrounding it.[17] If, after this analysis of the plain meaning, the word is still ambiguous, the Court

must turn to the purpose of the statute for guidance.[18] In applying these rules of statutory

construction, courts have developed the three aforementioned approaches to defining a debtor's

"household."[19] The choice of approach can result in varying outcomes under the same factual

circumstances. No approach is perfect; each has its own benefits and drawbacks. However, the

Court finds the Economic Unit Approach most consistent with Congress's intent behind BAPCPA

and the Bankruptcy Code as a whole.

### A. The "Heads on Beds" Approach

The Debtors request this Court adopt the "Heads on Beds" Approach to defining

"household" from the Census Bureau. The "Heads on Beds" Approach requires courts to conduct

a relatively simple inquiry; the court must only determine how many individuals occupy a housing

unit. This definition of "household" is not confined to those with familial ties or who are dependent

---

[15] *Easom v. U.S. Well Services, Inc.*, 37 F.4th 238, 242 (5th Cir. 2022); *In re Lively*, 467 B.R. 884, 892 (Bankr. S.D. Tex. 2012) ("The starting point for any exercise in statutory interpretation is the statute's plain language.").

[16] *Perrin v. U.S.*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

[17] *Smith v. U.S.*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it."); *Knapp v. U.S. Dept. of Agriculture*, 796 F.3d 445, 466 (5th Cir. 2015).

[18] *See Milner v. Dep't of the Navy*, 562 U.S. 562, 570–72 (2011).

[19] *Johnson*, 686 F.3d at 226–27, 235–38 (providing review of approaches and collecting cases).

on one another financially.[20] The "Heads on Beds" Approach typically results in the debtor claiming the greatest number of individuals within the household and, in turn, reduces the likelihood that the debtor must comply with the "means test" and sixty (60) month commitment period.[21]

Courts adopting the "Heads on Beds" Approach have generally done so for two reasons: (1) they find the plain meaning of "household" to encompass *all* those who live within the home and (2) they find that the context of the statute supports this broad answer.[22] This Court finds that analysis flawed. First, the plain language of "household" is far from clear. Different dictionaries give different definitions, which vary to include all those who live within a home, those who make up a home unit, or those who are related within the home.[23] These varying definitions display at least a contemplation of "household" to mean something more than just a mere co-tenant relationship.[24] Second, while it is correct that words should not be read in a vacuum, the context of the statute does not resolve the ambiguity. While § 1325(b) does *reference* the Census Bureau's median income tables, the Court finds that alone insufficient.[25] Nothing in § 1325(b) directly or indirectly incorporates the Census Bureau's definition.[26] Additionally, though the Code uses

---

[20] *In re Morrison*, 443 B.R. 378, 384–85 (Bankr. M.D. N.C. 2011).

[21] *Skiles*, 504 B.R. at 878.

[22] *See e.g.*, *id.* at 877. Absent congressional mandate to the contrary, these courts find the plain meaning of "household" is met by counting all those who live within the housing unit. *In re Smith*, 396 B.R. 214, 216–18 (Bankr. W.D. Mich. 2008).

[23] *See, e.g.* Black's Law Dictionary 857 (10th ed. 2014) (defining "household" as a "family living together" or a "group of people who dwell under the same roof"); Merriam–Webster's Collegiate Dictionary 562 (10th ed. 1999) (defining "household" as "those who dwell under the same roof and compose a family"); Deluxe Black's Law Dictionary 740 (9th ed. 1990) (defining "household" as a "family living together" or "[t]hose who dwell under the same roof and compose a family"); Webster's New Collegiate Dictionary 550 (1979) (defining "household" as "those who dwell under the same roof and compose a family" or "a social unit comprised of those living together in the same dwelling").

[24] *See Johnson*, 686 F.3d at 233 ("These components of the 'ordinary' dictionary definition suggest that a 'household' also consists of something beyond co-residency. It is therefore not evident from the word 'household' alone which common and ordinary definition Congress intended to apply in the § 1325(b) analysis.").

[25] *Skiles*, 504 B.R. at 880 (citing *Johnson*, 686 F.3d at 235).

[26] *Johnson*, 686 F.3d at 235.

similar terms elsewhere in § 1325, like "dependent" or "family," the Court finds this is inconclusive as to Congress's intent for the meaning of "household."[27]

Further, and importantly, the purpose of the Census Bureau's definition is not the same as that of the Bankruptcy Code.[28] The Bankruptcy Code uses the measure of a debtor's "household" to determine a debtor's disposable income and the amount paid to creditors over the duration of a plan.[29] In contrast, the Census Bureau's calculation is utilized to determine the sheer number and demographics of those residing in particular areas of the country.[30] The purpose of the Bankruptcy Code's measure would be derailed if debtors were allowed to count individuals transiently in their home without support from the debtors.[31] The "Heads on Beds" Approach would arguably include the occasional "couch surfer" or extended guest. This approach would allow a debtor to subtract deductions from the debtor's current monthly income for individuals who are fiscally independent of the debtor, far afield from the purpose of the required calculation.[32] Additionally, it does not take a large logical leap for this Court to theorize that a crafty debtor could take advantage of this approach, purposely skewing his or her household number upwards to reduce payment requirements to creditors.[33]

This Court finds the "Heads on Beds" Approach improper. The Bankruptcy Code did not define, nor can this Court interpret, "household" to wholesale mean all those who reside within a

---

[27] *See id.* at 235–36.

[28] *See Morrison*, 443 B.R. at 386 (citing *In re Jewell*, 365 B.R. 796, 800 (Bankr. S.D. Ohio 2007)).

[29] *See Skiles*, 504 B.R. at 880.

[30] *Morrison*, 443 B.R. at 386; *see also In re Robinson*, 449 B.R. 473, 480 (Bankr. E.D. Va. 2011) (citing *Jewell*, 365 B.R. at 800).

[31] *Morrison*, 443 B.R. at 387 ("The process of determining a debtor's disposable income by subtracting allowable deductions from the debtor's current monthly income would be derailed if the debtor's 'household' included individuals who operate as separate economic units.").

[32] *Robinson*, 449 B.R. at 481 ("The 'heads on beds' approach would permit a debtor to subtract deductions from the debtor's current monthly income for individuals who are fiscally independent of the debtor. Thus, it would permit some debtors to avoid paying their unsecured creditors the true amount of their disposable income.").

[33] The Court sees thousands of consumer debtors each year. While this theorized tactic is just that, a thought experiment, the Court must at least point out the potential for abuse in its analysis.

home. As such, the Court will not adopt the "Heads on Beds" Approach requested by the Debtors. The "Heads on Beds" Approach might get debtors to the *easiest* number, but it clearly overcounts a debtor's household and diverts from the purpose of the Bankruptcy Code's "means test." The Court must adopt the approach that fulfills the goals of the Bankruptcy Code *and gets to the **right** number*. Accordingly, the Court will not adopt the "Heads on Beds" Approach.

### B. The Income Tax Dependent Approach

Neither the Debtors nor the Trustee request this Court adopt the Income Tax Dependent Approach. This approach merely looks to determine who was or could be included as a dependent on the debtor's tax returns.[34] Unlike the overbreadth of the "Heads on Beds" Approach, the Income Tax Dependent Approach tends to undercount the individuals in one's household. This is because the Internal Revenue Code narrowly defines who may be a member of the "household" on an individual's tax return, requiring an individual to satisfy a list of specific requirements for dependency.[35]

Courts that adopt this approach generally do so because, in these courts' opinions, it provides the most consistency between the different provisions of the Code.[36] As an example, when describing the allowable expenses for an above median debtor, § 1325(b)(2) of the Code only allows expenses "for the maintenance or support of the debtor or a *dependent* of the debtor," and then references the "means test" under § 707(b) for determining allowable expenses.[37]

---

[34] *Johnson*, 686 F.3d at 226–27; *see also id.* at 238 ("Bankruptcy courts have articulated the income tax dependent method to define a 'household' as the same number of individuals as 'those allowed as dependents on the taxpayer's tax returns[.]'").

[35] *Skiles*, 504 B.R. at 878. The IRS applies a dependency test that requires an individual to satisfy six (6) requirements to qualify as an IRS tax dependent. *See In re Frye*, 440 B.R. 685, 687 (Bankr. W.D. Va. 2010). "The IRS has adopted a dependency test requiring an individual to satisfy each of the following requirements in order to qualify as an IRS tax dependent: '(1) a relationship test; (2) an age test; (3) a residency test; (4) a financial support test; (5) a joint return test; and (6) a special test for dependent children of more than one person.'" *Skiles*, 504 B.R. at 878 (citing *Frye*, 440 B.R. at 687).

[36] *See id.*

[37] 11 U.S.C. § 1325(b)(2) (emphasis added).

However, § 1325(b)(4) determines whether a debtor is above-median and thus whether the "means test" applies; this provision references the debtor's "household."[38] Because §§ 1325(b) and 707(b) are each parts of a singular calculation, one using "dependents" and the other using "household," some courts find it logical that they be read consistently.[39] Thus, courts adopting this approach believe that the use of the term "dependent" when determining a debtor's expenses should be consistently applied to a debtor's income and "household" size.[40]

This Court disagrees with that reasoning. This approach does not provide a *consistent* result; rather¸ it provides an ***incorrect*** result when applying rules of statutory construction. First, ***nowhere*** in the Bankruptcy Code does it mandate the IRS definition of dependent should be used.[41] If Congress had meant for the term "household" to mean only those who can qualify as IRS dependents, it would have said so. The United States Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."[42] This goes likewise for those things not stated, and nowhere does the Code require the IRS definition to apply. Second, neither § 707(b) nor § 1325(b) expressly incorporate the IRS definitions. In fact, § 1325(b) refers to both "dependents" and "household" at different points.[43] If Congress had intended for "household" to mean exclusively those who can be the debtor's dependents for tax purposes, it would have stated so.[44] Instead, Congress used separate

---

[38] *Id.* § 1325(b)(4).

[39] *Skiles*, 504 B.R. at 878 (citing *Johnson*, 686 F.3d at 238). "Additionally, courts adopting this definition believe inequitable results will occur if income and expenses are determined using different standards. For example, if a debtor's 'household' can include any person living within his home, but he can only take expenses associated with a dependent, a debtor's calculation of disposable income will be distorted." *Id.*

[40] *In re Napier*, No. Civ. A. 06–02464–JW, 2006 WL 4128358, at *2 (Bankr. D. S.C. Sept. 18, 2006); *see also Robinson*, 449 B.R. at 479; *In re Law,* No. 07–40863, 2008 WL 1867971, at *5 (Bankr. D. Kan. Apr. 24, 2008).

[41] *Skiles*, 504 B.R. at 880.

[42] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted).

[43] 11 U.S.C. § 1325(b).

[44] *Skiles*, 504 B.R. at 880 ("[I]f Congress had intended the term 'household' to refer only to a debtor's dependents that satisfy IRS requirements, a very simple wording change could have achieved that result.").

terms within § 1325(b).[45] The Court sees this as purposeful. To force these words to mean the same would be improper, even if it might add consistency to the Code.

Additionally, as previously stated, this Court's duty in interpreting an ambiguous provision is to turn to the purpose of the statute.[46] The purpose of the Bankruptcy Code is not one-in-the-same as that of the Internal Revenue Code, much like the previous discussion regarding the Census Bureau's definition. The Internal Revenue Service's purpose is to collect revenue for the government, but the term "household" within the Bankruptcy Code is meant to be used to determine a debtor's disposable income and the amount paid to creditors.[47] The Bankruptcy Code, by this determination, seeks an *accurate* assessment of a debtor's financial situation and thus what the debtor can feasibly pay over time to these creditors.[48] That is a far different purpose. If the Court were to adopt the Income Tax Dependent Approach, it would significantly hamper the Court's ability to get an accurate assessment of a debtor's economic situation. The Internal Revenue Code's dependency test can exclude individuals who are financially dependent on the debtor.[49] This Court, and surely hundreds of bankruptcy courts around the country, commonly see debtors every day who financially support others despite being unable to count them as dependents on their tax returns. If this were a requirement to be a member of the debtor's "household" for purposes of the Bankruptcy Code, it would result in a severe undercounting, and it would ignore

---

[45] *Johnson*, 686 F.3d at 239 ("[Section] 1325(b)(2) refers to 'dependents' at one point in the provision and 'household' in another, even setting aside § 1325(b)'s subsequent cross-reference to § 707(b), which in turn uses both 'dependents' and 'household.' If Congress had intended for 'household' to refer exclusively to the debtor and his or her dependents as defined for income tax purposes, it could have done so. Congress did not, and instead referred to a debtor's 'household.'").

[46] *See Milner*, 562 U.S. at 570–72.

[47] *Skiles*, 504 B.R. at 880.

[48] *See Johnson*, 686 F.3d at 239.

[49] *Frye*, 440 B.R. at 687.

these economic realities.[50] By not creating an accurate picture of the "household" in which the debtor functions, the Internal Revenue Code definition is incongruent with the rehabilitative purpose of the Bankruptcy Code and cannot be adopted.[51]

The rigid requirements of the Internal Revenue Code should not be forced upon debtors for purposes of determining "household" under the Bankruptcy Code, nor does statutory construction provide for such an application. Accordingly, the Court declines to adopt the Income Tax Dependent Approach.

### C. The Economic Unit Approach

The fact that courts across the country have come to different conclusions as to what Congress meant by "household" in § 1325(b) evidences that the word is ambiguous.[52] Therefore, it is this Court's duty to determine which approach most adequately reflects Congress's intent in requiring a debtor to determine "household" size. The purpose of the Bankruptcy Code and specifically this measure is not to measure demographics or size of a region, nor is to raise revenue for the federal government. "Household" is used in the Code to help provide an *accurate* assessment of a debtor's finances and what the debtor can pay to creditors over the plan period.[53] Like *many* other courts, this Court believes that the proper approach must be one that is case-specific and flexible enough to accurately encompass the reality of any debtor's economic

---

[50] *Johnson*, 686 F.3d at 239 ("[T]he income tax dependent method poses an unnecessary risk of skewing the calculation by 'undercounting legitimate deductions due to a debtor who financially provides for individuals he or she does not claim as dependents' on his or her tax return.") (quoting *Robinson,* 449 B.R. at 481).

[51] *See id.* at 233 ("It is therefore not evident from the word 'household' alone which common and ordinary definition Congress intended to apply in the § 1325(b) analysis. A statutory interpretation of 'household' could be crafted in several different ways that would yield different household sizes depending on which dictionary definition is used.").

[52] *See Morrison*, 443 B.R. at 387 ("The fact that several courts have arrived at different conclusions regarding the meaning of 'household' reveals that the term lacks a readily-apparent plain meaning.").

[53] *See id.* at 239.

situation.[54] The bankruptcy system must be dynamic, adaptive to the variations in size and composition of those individuals that live within a home.[55]

The Trustee requests that this Court adopt the Economic Unit Approach to determining one's "household." The Economic Unit Approach assesses the number of individuals in the household who act as a single economic unit.[56] In determining which members make up this economic unit, the bankruptcy court must inquire into (i) who is financially dependent on the debtor, (ii) who financially supports the debtor, and (iii) whose income and expenses intermingle with the debtor's.[57] This is the most flexible approach by courts, allowing the bankruptcy court to adapt to an individual debtor's unique, personal circumstances.[58] It also might be described as the most exacting, particularly since the final calculation of "household" can result in a fractional number, which although perhaps unpalatable in a literal sense, is an expected result of a complicated living arrangement.[59]

Only the Economic Unit Approach provides such an *accurate* result. This accuracy (and flexibility) is best reflected by way of example. In *Robinson*, the bankruptcy court was tasked with determining the number of members of a debtor's "household" in the face of the debtor's unique home situation.[60] As the court opined, the "[d]ebtor's family [did] not fit the traditional family

---

[54] *Johnson*, 686 F.3d at 237 ("The [economic unit] approach is flexible because it recognizes that a debtor's 'household' may include non-family members and individuals who could not be claimed as dependents on the debtor's federal income tax return, but who nonetheless directly impact the debtor's financial situation."); *Morrison*, 443 B.R. at 388 ("This Court, like all courts, encounters debtors with many types of living arrangements. Regardless of any unique, novel, or unexpected living arrangement involved, the economic unit approach is consistent with the goal of the means test to determine a debtor's disposable income.").

[55] *See Robinson*, 449 B.R. at 482.

[56] *Johnson*, 686 F.3d at 227–28.

[57] *Id.*

[58] *Id.* at 227.

[59] *See e.g.*, *id.* at 242 ("Nor did the bankruptcy court err in exercising its discretion to accommodate this reality in the debtor's situation by representing the individuals as fractional full-time members of the household and then rounding to a whole number."); *Robinson*, 449 B.R. at 482–83.

[60] *Id.* at 475–82.

mold[.]"[61] The debtor was an unmarried father of four (4) children, not all of whom were siblings.[62] Even so, the children and the debtor functioned as a family with the children spending approximately four (4) days each week with the debtor and the other days with their mothers.[63] The debtor had rooms for the children at his apartment and he provided for certain expenses[64] and child support each month; however, the debtor could not qualify to name them as his dependents for tax purposes.[65] After calculating the debtor's monthly disposable income, based off certain deductions, the debtor proposed a plan.[66] The trustee objected to the plan arguing that the debtor had overstated the amounts he was permitted to deduct as his expenses, in turn understating the amount of projected disposable income that should be paid over time to unsecured creditors.[67]

These facts best illustrate the necessity of a flexible approach. If the Income Tax Dependent Approach was adopted, for example, the *Robinson* debtor would have been unable to claim or account for any of his children as members of his household. Despite contributing towards their large expenses and the children living in his home the majority of each week, they were not "dependents" on his tax return and would not have been counted as members of his "household." This not only feels unjust, but also drastically undercounts his economic situation. Likewise, if the "Heads on Beds" Approach was adopted, it appears the debtor could have counted all the children as members of his household, despite the debtor only housing them partially each week and sharing in their expenses with their mothers. This approach would allow the debtor to overstate his

---

[61] *Id.* at 475.

[62] *See id.*

[63] *See id.*

[64] Some of these expenses were great. For example, the youngest boy had "significant health complications and require[d] bi-weekly doctor visits and weekly urologist visits, as well as prescription medication." *Id.* The debtor was solely responsible for these costs. *Id.*

[65] *Id.* ("The Debtor has never claimed any of the children as a dependent on his tax return in the past, but he hopes to be able to claim two of them this year by agreement with the respective mothers of those two children.").

[66] *Id.* at 476–77.

[67] *Id.*

"household" size and pay less to unsecured creditors. This too seems wrong. As such, the *Robinson* court found that the only proper approach must be one flexible enough to account for this unique home life;[68] thus, the court adopted the Economic Unit Approach.[69]

As highlighted by *Robinson*, and the instant case, no two debtors' household situations are alike. The Court cannot promote and adopt a test for "household" that fails to consider that economic reality. The Economic Unit Approach aligns with the purpose and statutory language of the Bankruptcy Code.[70] The approach is flexible enough to get the bankruptcy court to the right number, while allowing the court discretion to encompass a variety of household situations.[71] For these reasons, as well as the aforementioned failings of the other approaches, the Court adopts the Economic Unit Approach to measuring "household" size.

Thus, based upon the foregoing and the record before the Court, it is hereby

**ORDERED** that the Trustee's Objection is **GRANTED** to the extent provided herein.

### ###END OF ORDER###

---

[68] *Id.* at 481 ("The inadequacy of these two approaches is well illustrated by the Debtor's specific family situation. The 'heads on beds' approach would be inconclusive for the Debtor. On the one hand, he maintains a three-bedroom apartment in order to accommodate his four children. On the other hand, these four children do not reside with him every day of the week, and typically only around four nights a week. Any determination of the number of 'heads on beds' for this Debtor would be fraught with uncertainty. The IRS dependents approach would also be flawed. The Debtor has not claimed any of the children as dependents in the past, though by agreement with the mothers he hopes to be able to claim two of the children this year. If this approach were applied, the Debtor's bankruptcy case (and the proper distribution to unsecured creditors) could be hijacked by the choices the Debtor and the mothers of his children make regarding their tax returns.").

[69] *Id.* at 481–82 ("[T]his Court finds that the economic unit approach to determining the size of a debtor's household most closely aligns with the purpose of 11 U.S.C. § 1325(b). A statute that aims to insure that Chapter 13 plans assign all of a debtor's projected disposable income to unsecured creditors must incorporate a definition of 'household' which aids in accurately calculating that projected disposable income. 'Household' must be based on the economic reality for a given debtor.").

[70] *Skiles*, 504 B.R. at 880.

[71] *See Ford*, 509 B.R. at 698.